**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

OLE VENTURES INC.,
a Florida Corporation;
OLE TRAVEL INC.,
a California Corporation;
OLGA CRISTINA WEBSTER
ALEXANDER,
an Individual Resident of Florida,

      Plaintiffs,

v.                                                                Case No.: _____

TIMOTHY ALEXANDER, an individual;
CHERYL CHRISTENSEN, an individual;
ERIK CHRISTENSEN, an individual,

      Defendants.

_____/

**COMPLAINT FOR DAMAGES**
**AND NOTICE REGARDING CORPORATE REPRESENTATION**

Plaintiff, OLGA CRISTINA WEBSTER ALEXANDER, appearing pro se and in her individual capacity, respectfully files this Complaint seeking both monetary damages and injunctive relief arising from the unlawful conduct described herein. In addition, Plaintiffs OLE VENTURES INC. and OLE TRAVEL INC. are joined as nominal plaintiffs solely for the purpose of preserving and tolling corporate claims, pending the formal appearance of counsel in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, corporations may not appear *pro se* and must be represented by licensed counsel. Accordingly, Plaintiffs

1

OLE VENTURES INC. and OLE TRAVEL INC. will retain and have counsel enter an appearance within thirty (30) days, subject to the Court's discretion and in accordance with Local Rule 2.02(b)(2) of the Local Rules of the United States District Court for the Middle District of Florida.

This Court has jurisdiction over the subject matter of this action pursuant to:

- 28 U.S.C. § 1331 (federal question jurisdiction), and/or

- 28 U.S.C. § 1332 (diversity jurisdiction), as applicable, and

- 28 U.S.C. § 1367(a) (supplemental jurisdiction over related state law claims).

Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the jurisdiction of this Court, and the defendants are subject to personal jurisdiction here.

All allegations in this Complaint are made upon personal knowledge as to Plaintiff OLGA CRISTINA WEBSTER ALEXANDER's own actions and experiences, and upon information and belief as to all other matters.

### I. NOTICE REGARDING CORPORATE REPRESENTATION

Plaintiff OLGA CRISTINA WEBSTER ALEXANDER appears *pro se* and in her individual capacity in this civil action. Plaintiffs OLE VENTURES INC. and OLE TRAVEL INC. are named as additional plaintiffs for the sole and limited purpose of preserving their respective claims, tolling any applicable statutes of limitations, and protecting corporate rights and causes of action arising out of the same operative facts, events, and injuries alleged herein.

Plaintiffs acknowledge that under Rule 11(a) of the Federal Rules of Civil Procedure and longstanding federal jurisprudence, a corporation may not appear *pro se* in any proceeding before a United States District Court, and must be represented by counsel duly

2

admitted to practice before this Court. See *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ("A corporation may appear in the federal courts only through licensed counsel."); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

Accordingly, Plaintiff OLGA CRISTINA WEBSTER ALEXANDER respectfully notifies the Court that corporate Plaintiffs OLE VENTURES INC. and OLE TRAVEL INC. will obtain licensed legal representation and have counsel enter an appearance within thirty (30) days of the filing of this Complaint. This request is made pursuant to the Court's discretion under Rule 6(b)(1)(A) of the Federal Rules of Civil Procedure and, if applicable, Local Rule 2.02(b)(2) of the United States District Court for the Middle District of Florida (or equivalent Local Rule depending on the division), which permits reasonable extensions of time for good cause.

Given the emergency and time-sensitive nature of the underlying claims, including ongoing or imminent harm to Plaintiff and the corporate entities, Plaintiff respectfully requests that the Court:

1. Stay any dismissal or adverse ruling as to the corporate Plaintiffs for a period of thirty (30) days;

2. Permit substitution or appearance of counsel within that time frame without prejudice to the preservation of the corporate Plaintiffs' claims;

3. Allow the individual Plaintiff, OLGA CRISTINA WEBSTER ALEXANDER, to proceed *pro se* in the interim.

Plaintiffs OLGA CRISTINA WEBSTER ALEXANDER, OLE VENTURES INC., and OLE TRAVEL INC. (collectively, "Plaintiffs"), by and through undersigned counsel upon entry of appearance, hereby bring this Complaint against Defendants TIMOTHY

3

ALEXANDER, CHERYL CHRISTENSEN, and ERIK CHRISTENSEN ("Defendants"), and allege as follows:

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Plaintiff OLE VENTURES INC. is a corporate entity duly incorporated and organized under the laws of the State of Florida, with its principal place of business located within the State of Florida. Plaintiff OLE TRAVEL INC. is a corporation formed under the laws of the State of California, with its corporate headquarters and principal operations located within California. Plaintiff OLGA CRISTINA WEBSTER ALEXANDER is a natural person who maintains residency in both Florida and California and is a citizen of the United States.

Upon information and belief, Defendants TIMOTHY ALEXANDER, CHERYL CHRISTENSEN, and ERIK CHRISTENSEN are natural persons who are citizens and residents of the State of Georgia at all relevant times. None of the Defendants share a state of citizenship with any of the Plaintiffs, thereby satisfying the requirements of complete diversity under federal law.

Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events, transactions, and omissions giving rise to the claims asserted herein occurred within this District. Specifically, significant conduct giving rise to Plaintiffs' injuries occurred in Manatee County, Florida, and Plaintiffs suffered damages and ongoing harm within this jurisdiction. Accordingly, venue is proper in this forum as the judicial district in which a substantial

4

part of the relevant events occurred and where the interests of justice and judicial economy are best served.

### III. TOLLING AND TIMELINESS

This action is timely filed and not barred by any applicable statute of limitations. Plaintiffs initially commenced a civil action on August 6, 2020, in the Superior Court of California, County of San Mateo, bearing Case No. 20-CIV-03314, asserting claims arising from acts of financial fraud, identity theft, and related tortious conduct occurring between 2010 and 2017. That action was timely filed within the applicable limitations periods prescribed under California law.

Throughout the pendency of the California proceedings, Defendants consistently and willfully obstructed discovery, in direct violation of multiple court orders compelling the production of documents and the appearance of witnesses for deposition. Over a span exceeding fifty-eight (58) months, Defendants engaged in a persistent pattern of noncompliance, resulting in a complete failure of discovery: no depositions were taken, and no discovery was completed.

In December 2024, Plaintiffs uncovered for the first time that Defendants—or individuals acting on their behalf—had illegally obtained Plaintiffs' confidential financial records. These records were subsequently used in a coordinated effort to interfere with and sabotage Plaintiffs' business operations during calendar years 2024 and 2025, constituting new and independently actionable tortious conduct.

Critically, Plaintiffs were affirmatively misled by a third-party deposition officer who, in a sworn statement, falsely represented that no financial records had been disclosed. This false representation directly delayed Plaintiffs' ability to discover the 2024–2025

misconduct. As a result, the newly uncovered claims did not accrue until Plaintiffs, exercising reasonable diligence, discovered the operative facts in December 2024. Accordingly, Plaintiffs invoke the following tolling doctrines and statutory authorities to demonstrate the timeliness of this action:

- Florida Statutes § 95.051(1)(f), which tolls the running of the statute of limitations where the defendant has fraudulently concealed the cause of action;

- The doctrine of equitable tolling, applicable where extraordinary circumstances beyond the plaintiff's control prevent timely filing despite diligent pursuit of rights;

- The doctrine of equitable estoppel, where a defendant's wrongful conduct has induced the plaintiff to forgo or delay asserting a valid claim; and

- The doctrine of waiver, arising from Defendants' strategic misuse of judicial process and bad faith conduct designed to thwart discovery.

Moreover, under Florida's discovery rule, which applies to fraud-based and concealed tort claims, a cause of action does not accrue until the plaintiff knew or reasonably should have known of the facts giving rise to the claim. See *Davis v. Monahan*, 832 So. 2d 708, 709–10 (Fla. 2002). Because Plaintiffs did not and could not have reasonably discovered the 2024 misconduct until December 2024, the claims herein are timely as a matter of law. For the foregoing reasons, this action is properly and timely before this Court, and none of the claims alleged herein are barred by any statute of limitations.

## IV. INTRODUCTION AND BACKGROUND

This civil action arises from a persistent and ongoing pattern of financial fraud, conversion, concealment, abuse of process, and unlawful interference with Plaintiffs' property and privacy rights perpetrated by Defendants, beginning as early as 2010 and continuing through at least 2025. The misconduct described herein constitutes both a

6

continuation of previously litigated wrongdoing and the emergence of newly discovered, independently actionable torts that occurred within the applicable statutory periods.

Plaintiffs were previously engaged in good faith litigation against Defendant TIMOTHY ALEXANDER and other co-conspirators in the Superior Court of California, County of San Mateo, in Case No. 20-CIV-03314, filed on August 6, 2020, asserting claims based on a pattern of financial misconduct dating back to 2010. Over the course of more than fifty-eight (58) months, Defendants repeatedly and willfully obstructed the adjudicatory process in that case by refusing to produce any discovery, violating no fewer than three separate court orders compelling production, appearance for deposition, and payment of monetary sanctions. Despite the issuance of orders compelling compliance, Defendant TIMOTHY ALEXANDER remains in contempt of court in the State of California as of the filing of this Complaint.

In addition to his obstructionist conduct, Defendant TIMOTHY ALEXANDER unilaterally filed a cross-complaint nearly four years into the litigation without leave of court and after the expiration of the applicable statute of limitations. At the same time, Defendant initiated a parallel and duplicative legal proceeding in Manatee County, Florida, asserting claims arising from the same nucleus of facts. That Florida action was ultimately dismissed with prejudice on May 8, 2024, and is now res judicata. Despite the clear preclusive effect of the Florida judgment, Defendant refused to dismiss the duplicative California cross-complaint—deliberately prolonging litigation until the case was subject to automatic dismissal under California's five-year rule.

As a direct result of these bad-faith litigation tactics, Plaintiffs were denied access to a fair trial and deprived of their constitutional right to meaningful judicial redress. The

7

California case was terminated not on the merits but due to procedural sabotage by Defendants, undertaken in bad faith and with the specific intent to evade liability.

Compounding the prior misconduct, in December 2024, Plaintiffs discovered that Defendants, or individuals acting on their behalf, had unlawfully obtained Plaintiffs' confidential financial records without authorization. These records were subsequently used to sabotage the operations of Plaintiffs' business entities, causing substantial economic loss and reputational harm during the 2024 and 2025 calendar years. This conduct was discovered only after Plaintiffs were affirmatively misled by a third-party deposition officer, who falsely represented that no such records had been disclosed. This deception materially delayed Plaintiffs' ability to uncover and investigate the new tortious acts.

Moreover, Defendants have refused to comply with validly issued subpoenas, including repeated demands to produce the subpoenas or documentation used to improperly access Plaintiffs' private financial information. These efforts to conceal wrongful conduct and suppress material evidence constitute independent violations of Florida law, including tortious invasion of privacy, conversion of financial data, and fraudulent concealment.

These newly uncovered acts give rise to distinct and ongoing claims that are not barred by any applicable statute of limitations, pursuant to Florida Statutes § 95.051(1)(f), which tolls limitations where a defendant fraudulently conceals a cause of action. Plaintiffs further invoke the equitable tolling and equitable estoppel doctrines, given that Defendants' deliberate acts of concealment, deception, and judicial obstruction prevented the timely discovery and assertion of these claims. These doctrines apply with particular force where, as here, Plaintiffs were actively and affirmatively misled by Defendants and their agents, causing substantial delay despite diligent efforts to uncover the truth.

Accordingly, Plaintiffs' claims are timely, independently actionable, and properly before this Court for adjudication on the merits.

## V. LEGAL ARGUMENTS FOR FEDERAL CLAIM: TOLLING, CONTINUING TORTS, AND BIAS IN PRIOR PROCEEDINGS

### A. Continuing Torts and Fraudulent Concealment

Defendants' conduct does not represent a closed series of historical events, but rather a prolonged and continuing pattern of tortious activity, fraud, and obstruction extending through 2025. These include the unauthorized procurement and misuse of Plaintiffs' private financial records, fraudulent filings in multiple jurisdictions, the issuance and concealment of unauthorized subpoenas, and a sustained campaign of litigation abuse.

Pursuant to the continuing tort doctrine, each act of concealment, misappropriation, and misuse of financial information constitutes a new, independent tortious event, thereby restarting the limitations period. See *Chakra 5, Inc. v. City of Miami Beach*, No. 1:17-cv-20079-KMM, 2017 WL 5159605, at *5 (S.D. Fla. Nov. 7, 2017) (recognizing the continuing tort doctrine where injury is perpetuated over time by repeated wrongful acts).

Furthermore, Defendants intentionally concealed their actions, including by procuring false assurances from third-party deposition officers and affirmatively misleading Plaintiffs as to whether private records had been released. Under Florida Statutes § 95.051(1)(f), the statute of limitations is tolled where a defendant fraudulently conceals the existence of a cause of action. See *Sullivan v. Fulton County Adm'r*, 763 F. App'x 858 (11th Cir. 2019) (holding that equitable tolling may apply where concealment by the defendant delayed discovery of the injury).

9

**B. Equitable Tolling and Equitable Estoppel**

Plaintiffs also invoke the doctrines of equitable tolling and equitable estoppel, which are appropriate where the plaintiff, despite diligent efforts, is unable to timely file due to misrepresentations or concealment by the defendant. See *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1200, 1205 (Fla. 3d DCA 2017). The record here reflects that Defendants' conduct—including discovery evasion, falsified filings, and procedural manipulation—materially hindered Plaintiffs' ability to assert their claims.

Additionally, equitable estoppel precludes a party from asserting a statute of limitations defense where their own misconduct contributed to the delay. See *Meyer v. Meyer*, 595 So. 2d 278, 279 (Fla. 5th DCA 1992). Defendants' deliberate refusal to comply with discovery orders and their calculated delay in producing relevant financial information directly contributed to the timing of this Complaint.

**C. Florida's Discovery Rule**

Under Florida's delayed discovery rule, the statute of limitations for fraud-based claims does not begin to run until the plaintiff knew or reasonably should have known of the wrongful conduct. See *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97 (Fla. 3d DCA 2019). In this case, Plaintiffs discovered the illegal access to and use of their financial records only in December 2024, despite prior inquiries and assurances that no such records had been released. The newly discovered injuries—including sabotage of business relationships and theft of corporate funds—constitute fresh tortious acts, not merely extensions of past claims.

**D. Federal Jurisdiction Based on Procedural Irregularities and Due Process Violations in California Proceedings**

Plaintiffs further assert that the procedural misconduct and denial of due process in the California state court proceedings justify the exercise of federal jurisdiction under the doctrine of collateral federal review and equitable relief under 28 U.S.C. § 1651(a) (the All Writs Act) and 42 U.S.C. § 1983, where applicable.

Key procedural irregularities include:

1. Defendant TIMOTHY ALEXANDER filed a cross-complaint on December 23, 2024, nearly four years into the case, without leave of court, and despite the fact that identical claims had been dismissed with prejudice in Manatee County, Florida on May 8, 2024. The California court declined to hear Plaintiffs' motion to strike, in apparent disregard of principles of res judicata.

2. On January 17, 2024, Defendant filed an amended cross-complaint without leave of court, in violation of procedural rules, and in disregard of statutory time bars.

3. Between August 2024 and March 2025, Plaintiffs' critical motions—each raising substantial issues of discovery abuse, tolling, and jurisdiction—were either removed from calendar without explanation or were not adjudicated prior to the setting of trial. These motions included:

    o   08/26/24: Motion to Compel Defendant's Deposition

    o   09/16/24: Demurrer to Cross-Complaint

    o   10/29/24: Motion to Compel Discovery

    o   12/23/24: Motion for Equitable Tolling under Cal. Civ. Proc. Code §§ 473(b), 583.340

    o   01/27/25: Motion to Exclude Illegally Obtained Financial Records

    o   01/27/25: Motion to Strike Cross-Complaint

    o   02/03/25: Motion to Expunge Lis Pendens

    o   03/11/25: Motion for Contempt

    o   03/18/25: Motion to Set Aside Unauthorized Substitution of Counsel

These omissions and procedural anomalies constitute a systemic denial of due process, which deprived Plaintiffs of a meaningful opportunity to litigate their claims on the merits. Where state court procedures fail to afford adequate redress and fairness, federal courts are authorized to provide equitable relief and review. See *Shelley v. Kraemer*, 334 U.S. 1, 18–19 (1948); *Moore v. Sims*, 442 U.S. 415, 430 (1979).

In light of the ongoing nature of Defendants' tortious conduct, the affirmative acts of concealment, the deliberate procedural manipulation in both Florida and California proceedings, and the denial of access to a fair tribunal, this action is timely, properly grounded in federal jurisdiction, and falls within the scope of judicial remedies available under state and federal law. Plaintiffs respectfully request that the Court deny any limitations-based challenges and allow this matter to proceed to adjudication on the merits.

## V. CAUSES OF ACTION

## COUNT I:
## FRAUD AND CONCEALMENT

1. Plaintiffs incorporate by reference all preceding allegations contained in this Complaint as though fully set forth herein.

2. Defendants, individually and in concert, engaged in a deliberate, systematic, and ongoing scheme to defraud Plaintiffs by intentionally misrepresenting and concealing material facts regarding the unauthorized acquisition, manipulation, and misuse of

Plaintiffs' financial records, the nature and content of subpoenas used to obtain such records, and the procedural integrity of litigation filed in multiple jurisdictions. These misrepresentations were not mere omissions, but were affirmative acts of deception, perpetrated to conceal the existence of causes of action and to preclude Plaintiffs from asserting their legal rights in a timely and informed manner.

3.  The fraudulent conduct includes, but is not limited to:\

(a) Concealing the issuance and content of subpoenas directed to third parties for the release of Plaintiffs' confidential banking and financial records;

(b) Misleading Plaintiffs through third-party deposition officers and legal representatives who affirmatively stated that no records had been released, when in fact Defendants had obtained such records without proper authority;

(c) Submitting false and misleading filings to state courts in both Florida and California, including filings intended to relitigate matters previously adjudicated with finality;

(d) Orchestrating a pattern of procedural obstruction and litigation abuse to suppress discovery of the fraud, avoid adjudication on the merits, and induce automatic dismissal through the five-year rule under California law.

4.  Defendants' representations were knowingly false, made with the specific intent to deceive and suppress the truth, and were calculated to induce Plaintiffs' reliance and inaction. Plaintiffs reasonably relied on Defendants' material misstatements and omissions, particularly where such representations were made through judicial filings, sworn declarations, and official communications involving court-sanctioned officers and

processes. This reliance was reasonable and foreseeable, especially given Defendants' use of formal legal mechanisms to bolster the apparent legitimacy of their conduct.

5. As a direct and proximate result of such reliance, Plaintiffs sustained substantial and measurable damages, including but not limited to:

- Financial losses and harm to business operations;

- Deprivation of access to critical business records;

- Legal expenses incurred in litigating improperly filed or duplicative claims;

- Loss of business goodwill and contractual relationships; and

- Emotional distress arising from the violation of privacy and misuse of personal financial data.

6. Under Florida law, the elements of actionable fraud are satisfied: (1) a false statement concerning a material fact; (2) knowledge by the defendant that the representation is false; (3) intent that the representation induce another to act on it; (4) reliance on the representation; and (5) damages resulting from the reliance. See *Florida Dept. of Ins. v. Debenture Guar. Corp.*, 921 F. Supp. 750, 754 (M.D. Fla. 1996). Further, the fraudulent concealment of critical facts by Defendants—particularly facts material to the formation and assertion of legal claims—gives rise to an independent cause of action for fraudulent concealment. See *Byrne v. Gulfstream First Bank & Trust Co.*, 528 F. Supp. 692, 698 (S.D. Fla. 1981).

7. Moreover, the allegations herein are pleaded with the specificity required under Federal Rule of Civil Procedure 9(b), identifying the "who, what, when, where, and how" of the fraud and placing Defendants on adequate notice of the claims asserted. The pattern of concealment and misrepresentation persisted through late 2024, when Plaintiffs—

14

despite diligent efforts—first discovered the unlawful access and use of their financial records.

8. Defendants' conduct was not only intentional but also outrageous, malicious, and carried out in willful and conscious disregard of Plaintiffs' statutory and constitutional rights. Plaintiffs therefore seek punitive and exemplary damages under Florida law, including but not limited to treble damages, where applicable, as a deterrent against continued fraud and to punish Defendants' egregious misconduct.

**COUNT II:**
**CONVERSION (UNAUTHORIZED CONTROL OF PROPERTY)**

9. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

10. Defendants, acting individually and in concert, intentionally and without lawful justification exercised wrongful dominion and control over Plaintiffs' tangible and intangible property, including but not limited to confidential financial records, business account credentials, proprietary business data, and corporate financial assets, in violation of Plaintiffs' possessory rights and without consent or legal authority.

11. Specifically, Defendant TIMOTHY ALEXANDER misappropriated and utilized Plaintiffs' confidential banking information to access corporate and personal accounts for the purpose of satisfying his own personal debts and financial obligations, despite having no ownership interest, authorization, or fiduciary capacity permitting such access. This conduct was unauthorized, deceptive, and undertaken with full knowledge that the funds and credentials in question belonged exclusively to Plaintiffs.

12. Under Florida law, conversion is defined as an unauthorized act which deprives another of his property permanently or for an indefinite time. The tort encompasses both

15

tangible and certain intangible property rights, including the unauthorized use or interference with access to digital accounts and financial information. See *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1543 (11th Cir. 1993) (recognizing conversion where a defendant exercises wrongful dominion over another's property without consent). Additionally, where a party gains unauthorized access to financial accounts and diverts funds for personal use, such conduct clearly supports a claim for conversion. See *Zeal Glob. Servs., Inc. v. SunTrust Bank*, 508 F. Supp. 3d 1348, 1354 (N.D. Ga. 2020).

13. Plaintiffs at all relevant times maintained rightful and exclusive ownership, title, and access rights to the property and records at issue, including business bank accounts and internal corporate records. Defendants had no legal or equitable interest in the property and were never granted access or consent to exercise control over the same.

14. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered significant financial loss, including diversion of business funds, depletion of account balances, exposure of sensitive information, loss of customer and vendor trust, and substantial disruption to ongoing business operations. Additionally, Plaintiffs have incurred legal fees, investigative costs, and reputational damage as a consequence of Defendants' unauthorized actions.

15. Defendants' conduct was deliberate, malicious, and committed in bad faith, warranting the imposition of punitive damages under Florida law, as well as all compensatory and equitable relief to which Plaintiffs are entitled, including disgorgement, restitution, and injunctive relief to prevent further misuse of confidential information.

16

## COUNT III:
## VIOLATION OF PRIVACY –
## INTRUSION UPON SECLUSION (IDENTITY THEFT)

16. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

17. Defendants, acting willfully, maliciously, and without lawful justification, engaged in a highly offensive and unauthorized intrusion into the private financial and personal affairs of Plaintiffs, including but not limited to accessing secure banking portals, appropriating login credentials, and obtaining sensitive corporate and personal financial records belonging to Plaintiff OLGA CRISTINA WEBSTER ALEXANDER and her affiliated business entities.

18. Specifically, Defendants used deceptive and unlawful means to gain access to confidential bank account information and proprietary business data, and further used Plaintiff OLGA ALEXANDER's personal identity and credentials to impersonate her and commit acts of financial misappropriation. These actions were carried out without Plaintiffs' knowledge or consent and in violation of their clearly established reasonable expectation of privacy under both Florida law and federal privacy norms.

19. Under Florida law, intrusion upon seclusion is a recognized form of invasion of privacy and arises where a defendant intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another in a manner that would be highly offensive to a reasonable person. See *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 159 (Fla. 2003); see also *Restatement (Second) of Torts § 652B*. This cause of action does not require publication, but rather focuses on the wrongful and offensive nature of the intrusion itself. Courts applying this standard have recognized intrusion through unauthorized access to

17

confidential digital or financial data. See also *Mitchell Co., Inc. v. Campus*, 672 F. Supp. 2d 1217, 1227–28 (S.D. Ala. 2009) (unauthorized access to sensitive business data supports claim for intrusion upon seclusion).

20. Defendants' conduct was intentional, unauthorized, and undertaken with actual malice and in conscious disregard of Plaintiffs' rights. Their actions were designed not only to invade Plaintiffs' privacy, but to exploit that access for personal gain and competitive sabotage.

21. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer significant and irreparable harm, including but not limited to:

    A. Economic losses stemming from financial misappropriation and unauthorized account activity;

    B. Severe emotional distress, including anxiety, fear, and loss of personal security;

    C. Loss of professional reputation and business relationships; and

    D. Ongoing vulnerability of sensitive personal and financial information.

22. Defendants' actions merit the imposition of compensatory damages, as well as punitive damages pursuant to Florida law, given the deliberate and malicious nature of the privacy violations alleged.

## COUNT IV:
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

23. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

24. At all times relevant, Plaintiffs maintained ongoing, advantageous business relationships and contractual expectancies with third-party clients, vendors, and supplier

platforms essential to the operation and success of their corporate entities, including online travel agencies (OTAs), reservation platforms, and affiliated service providers.

25. Defendants had actual knowledge of these business relationships and economic partnerships, and with malicious intent and without lawful justification, intentionally interfered with these relationships through unauthorized and unlawful means. Specifically, Defendants obtained and used stolen financial data, login credentials, and proprietary internal business information to gain access to reservation systems and supplier accounts operated by or on behalf of Plaintiffs.

26. Upon obtaining such unauthorized access, Defendants deliberately and surreptitiously interfered with Plaintiffs' business operations by:

- Cancelling amenities and listings hosted on supplier platforms;

- Blocking booking availability to prevent customers from making reservations;

- Manipulating backend account settings to misrepresent or mislead platform operators and users;

- And thereby discouraging existing and prospective clients from engaging in transactions with Plaintiffs.

27. These acts of interference directly resulted in financial loss, reputational harm, and disruption of business continuity, causing significant damage to Plaintiffs' commercial standing and business viability. Defendants' conduct was not only intentional and malicious, but targeted specifically to inflict economic harm and undermine the competitive position of Plaintiffs in their respective markets.

28. Under Florida law, a cause of action for tortious interference with a business relationship requires proof of:

19

(1) the existence of a business relationship or advantageous expectancy;

(2) the defendant's knowledge of that relationship;

(3) intentional and unjustified interference by the defendant; and

(4) damages resulting from the interference.

See *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1541 (11th Cir. 1993); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126 (Fla. 1985).

29. Defendants' interference was not privileged, not legally justified, and was undertaken with full awareness of the probable consequences. Their conduct was part of a deliberate effort to sabotage Plaintiffs' economic relationships, deprive them of revenue, and destabilize their corporate operations.

30. As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have sustained and continue to suffer significant financial loss, diminished goodwill, loss of customer and vendor relationships, reputational injury, and other compensable and irreparable harm.

31. Defendants' conduct was willful, malicious, and oppressive, thereby entitling Plaintiffs to an award of compensatory damages, punitive damages, injunctive relief, and any other relief the Court deems just and proper under law.

## COUNT V:
## CIVIL CONSPIRACY

32. Plaintiffs incorporate by reference all preceding allegations of this Complaint as though fully set forth herein.

33. Defendants TIMOTHY ALEXANDER, CHERYL CHRISTENSEN, and ERIK CHRISTENSEN knowingly and willfully entered into an agreement—either express or implied—for the purpose of engaging in unlawful, malicious, and tortious acts intended to

20

injure Plaintiffs financially, reputationally, and operationally. The Defendants acted in concert, pursuant to a coordinated and continuous scheme, to obstruct judicial proceedings, access confidential data without authorization, and interfere with Plaintiffs' business relationships.

34. The object of the conspiracy was to:

   A.  Undermine and destabilize Plaintiffs' business operations;

   B.  Frustrate Plaintiffs' access to the courts through procedural sabotage and obstruction;

   C.  Conceal liability for previous acts of fraud and tortious conduct;

   D.  Shield the co-conspirators from judicial accountability;

   E.  And profit from the misappropriation and misuse of Plaintiffs' confidential business and financial information.

35. As overt acts in furtherance of the conspiracy, Defendants engaged in the following conduct:

   A.  Filing frivolous and time-barred cross-complaints in California and duplicative proceedings in Florida;

   B.  Misusing court processes to avoid adjudication on the merits;

   C.  Issuing unauthorized subpoenas to obtain Plaintiffs' confidential banking and financial records;

   D.  Falsely representing the status of those records and obstructing discovery in violation of court orders;

   E.  And weaponizing privileged information to sabotage Plaintiffs' contractual relationships and platform access.

36. Under Florida law, a claim for civil conspiracy requires:

(1) an agreement between two or more parties;

(2) to do an unlawful act or to do a lawful act by unlawful means;

(3) the doing of some overt act in pursuance of the conspiracy; and

(4) damages to the plaintiff as a result of the acts done under the conspiracy. See *Florida Dept. of Ins. v. Debenture Guar. Corp.*, 921 F. Supp. 750, 754–55 (M.D. Fla. 1996); *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157 (Fla. 3d DCA 2008).

37. Each Defendant participated knowingly in the unlawful scheme, and the wrongful acts alleged were committed in furtherance of a shared conspiratorial objective. Defendants' mutual reinforcement and concealment of one another's misconduct further demonstrate the existence of a coordinated effort.

38. As a direct and proximate result of the conspiracy, Plaintiffs have suffered substantial and quantifiable damages, including but not limited to:

A. Lost business revenue and future economic opportunities;

B. Significant legal expenses in multiple jurisdictions;

C. Interruption and loss of business goodwill;

D. And reputational damage arising from the misuse of confidential information.

39. The conduct of Defendants was willful, malicious, and undertaken in bad faith, justifying the imposition of compensatory and punitive damages, as well as equitable relief, including injunctive relief, attorneys' fees, and any other remedies this Court deems just and appropriate under law.

## COUNT VI: NEGLIGENCE

40. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

41. At all times relevant, Defendants owed Plaintiffs a legal duty to exercise reasonable care in the handling of sensitive business information, the management and disclosure of financial communications, the conduct of litigation-related activities, and the interaction with third-party institutions and officers. This duty arose from both general legal principles and the foreseeability of harm resulting from misuse of confidential data and abuse of legal process.

42. Defendants breached their duty of care by engaging in reckless, careless, and unauthorized conduct, including but not limited to:

    A. Mishandling and disseminating Plaintiffs' confidential financial data;

    B. Using such data for improper, malicious, and self-serving purposes;

    C. Initiating **frivolous and time-barred litigation** in multiple jurisdictions;

    D. Misleading deposition officers, courts, and financial institutions;

    E. And actively obstructing Plaintiffs' efforts to obtain subpoenaed materials related to the unauthorized access of private financial accounts.

43. The standard for negligence under Florida law requires a showing of:

(1) the existence of a legal duty;

(2) a breach of that duty;

(3) a causal connection between the defendant's conduct and the resulting harm; and

(4) actual damages.

See *Commerce Bank, N.A. v. Ogden, Newell & Welch*, 81 F. Supp. 2d 1304, 1313 (M.D. Fla. 1999); *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003).

44. Defendants' conduct represents not mere inadvertence, but a **gross deviation** from the standard of care expected in both legal and business contexts. Their refusal to comply with discovery obligations, misuse of court processes, and failure to protect or lawfully handle sensitive financial data constitute multiple, independent breaches of their legal duties.

45. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs suffered foreseeable harm, including but not limited to:

    A.  Substantial financial loss;

    B.  Disruption of business operations and revenue streams;

    C.  Damage to professional and personal reputation;

    D.  Legal costs in responding to and unwinding the harm caused;

    E.  And emotional distress, anxiety, and security vulnerabilities arising from the unauthorized exposure of personal and financial information.

46. Plaintiffs are therefore entitled to compensatory damages, as well as equitable relief necessary to redress the ongoing consequences of Defendants' negligence and prevent future harm.

24

## COUNT VII:
## PERSONAL AND CORPORATE DEFAMATION
## - TORTIOUS INTERFERENCE

47. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

48. Defendants, including TIMOTHY ALEXANDER, knowingly and maliciously made false, defamatory, and injurious statements of fact, both orally and in writing, which were included in publicly accessible court filings in the Superior Court of California and elsewhere. These statements included the wholly fabricated allegation that Plaintiff OLGA CRISTINA WEBSTER ALEXANDER "stabbed" Defendant, a false and inflammatory criminal accusation that was deliberately inserted into the public record for the sole purpose of destroying Plaintiff's personal and professional reputation.

49. The false assertion imputed the commission of a violent felony and was intended to damage Plaintiff Alexander's character and standing in the community, particularly in her professional capacity as the founder and executive of OLE TRAVEL INC., a respected international travel company with a 38-year history of lawful and successful operations.

50. Under Florida law, false statements that impute the commission of a crime or tend to subject a person to hatred, distrust, ridicule, or contempt—especially those that harm a person in their trade or profession—constitute defamation per se, and no showing of special damages is required. See *Cottrell v. Smith*, 788 S.E.2d 772, 779 (Ga. 2016); see also *Log Creek, LLC v. Kessler*, 717 F. App'x 914, 918 (11th Cir. 2017) (applying Florida law and noting that defamatory per se statements relieve the plaintiff of the burden to prove special damages or actual malice).

25

51. These statements were made knowingly and with actual malice, as the accusations were false at the time they were made, unsupported by any evidence, and strategically deployed to interfere with legal proceedings, influence judicial perception, and irreparably harm Plaintiff's public image.

52. In addition to defaming Plaintiff Alexander in her individual capacity, Defendants also knowingly made false and injurious assertions regarding Plaintiffs OLE TRAVEL INC. and OLE VENTURES INC., including the claim that these lawful business entities were illegitimate, fraudulent "shell corporations," or improper "alter egos" of Ms. Alexander.

53. These statements, published in sworn declarations and legal filings, constitute corporate defamation, as they falsely conveyed statements of fact that directly damaged the reputation and commercial viability of both corporations. See *Melaleuca, Inc. v. Clark*, 66 F.3d 1454, 1465 (9th Cir. 1995) (holding that statements concerning a business's legitimacy or ethics may be actionable where they imply false factual assertions); see also *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (clarifying the standards for defamation and balancing First Amendment protections).

54. The defamatory statements were widely accessible via public court records and were cited and repeated in subsequent pleadings, communications with vendors, and third-party discovery. As a result of these false and malicious statements, multiple vendor contracts were cancelled, client relationships were terminated, and Plaintiffs experienced a direct decline in business income, reputation, and contractual stability.

55. Defendants' conduct also constitutes tortious interference with contractual and prospective business relationships. By publishing knowingly false statements with actual

malice, Defendants employed improper means to induce third parties to refrain from engaging in contractual or ongoing business dealings with Plaintiffs, thereby satisfying the elements of tortious interference under Florida law. See *Williams Elec. Co. v. Honeywell, Inc.*, 819 F. Supp. 1555, 1571 (N.D. Fla. 1993); *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1289 (M.D. Fla. 2020) (holding that defamatory and misleading statements can constitute improper means of interference).

56. As a direct and proximate result of Defendants' defamation and tortious interference, Plaintiffs have suffered:

    A. Substantial and quantifiable financial loss;

    B. Reputational harm both in personal and corporate contexts;

    C. Emotional distress and public humiliation;

    D. And loss of future economic opportunities.

57. The defamatory statements were made with actual malice, reckless disregard for the truth, and for the purpose of inflicting harm. Accordingly, Plaintiffs are entitled to recover general damages, special damages, punitive damages, and all other relief the Court deems appropriate, including injunctive relief to prevent continued dissemination of defamatory content.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs OLGA CRISTINA WEBSTER ALEXANDER, OLE TRAVEL INC., and OLE VENTURES INC. respectfully request that this Honorable Court enter judgment in their favor and against Defendants TIMOTHY ALEXANDER, CHERYL CHRISTENSEN, and ERIK CHRISTENSEN, jointly and severally, and award the following relief:

27

1. Compensatory damages in an amount to be determined at trial, including but not limited to economic losses, reputational harm, emotional distress, and other general and special damages arising from Defendants' unlawful conduct;

2. Punitive and exemplary damages in the amount of $3,000,000.00, or such other amount as the evidence at trial may warrant, to punish and deter Defendants' willful, malicious, and fraudulent misconduct;

3. An award of attorneys' fees and costs of suit, to the extent permitted by law, statute, or equity;

4. Equitable relief, including injunctive and declaratory relief as may be necessary to prevent continued or future harm to Plaintiffs;

5. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

6. Such other and further relief as the Court deems just, proper, and equitable under the circumstances.

Respectfully Submitted By:

/s/Olga Cristina Webster Alexander
Olga Cristina Webster Alexander
P.O. Box 1151
Anna Maria , Florida  34216
Tel: 415 467 0100
Email oc@ole.travel
*Plaintiff, Pro Se*

Dated on this 26th day of May 2025.